**Aubrey PHELPS et al., Appellants,**

**v.**

**James W. WADDLE et al., Appellees.**

Court of Appeals of Kentucky.

March 11, 1966.

Otis White, Morgantown, Marshall Funk, Bowling Green, for appellants.

Walter Chyle, Jr., Morgantown, Woodward, Bartlett & McCarroll, Owensboro, for appellees.

CULLEN, Commissioner.

The heirs of H. C. Phelps, deceased (his cousins), have appealed from a judgment upon a jury verdict upholding the probate of a lost will of the decedent which devised substantially all of his large estate to a step-son and the latter's wife, the appellees.

Before the will was probated, administration proceedings were instituted and one Cecil Wilson was appointed administrator. He employed W. A. Moore as attorney. After the will was probated in the county court the decedent's step-son qualified as executor and he likewise employed Mr. Moore. On the trial in circuit court Mr. Moore was permitted, over objection, to testify that he drew the will and to state its contents. The appellants contend that under KRS 421.210 as construed in Garnett v. Walton, Ky., 242 S.W.2d 107, Mr. Moore was disqualified by personal interest from testifying.

This Court has held that the potential fee from employment as attorney for the personal representative is not such monetary interest as will disqualify an attorney under KRS 421.210. See Reiter v. Harding, Ky., 290 S.W.2d 829; Cook v. Brown, Ky., 346 S.W.2d 725. Furthermore, in the instant case Mr. Moore did not stand to gain anything from the probating of the will and his employment as attorney for the executor, because he already had employment as attorney for the administrator. We conclude that Mr. Moore was not disqualified from testifying.

The appellants maintain that the trial court erred in permitting the step-son and his wife, who were the principal beneficiaries of the will, to testify that they had read the will and to state its contents. The testimony was objected to on the ground that the reading of the will was a transaction with the deceased concerning which the beneficiaries were disqualified by KRS 421.210 from testifying.

Had there been evidence that the reading of the will by the step-son and his wife was the result of the decedent's having ex-

hibited it to them for the purpose of their reading it, the witnesses would have been disqualified from testifying what they read because the reading and the exhibiting would have constituted one inseparable transaction with the decedent. Gibbs v. Terry, Ky., 281 S.W.2d 712. But the evidence did not show that the reading of the will was upon its exhibition by the decedent. As a matter of fact, when the attorney for the proponents of the will undertook to ask the step-son who showed the will to him, the attorney for the appellants objected and the question was not answered.

In the absence of a showing that the reading of the will was an incident of a transaction with the decedent the witnesses were not disqualified from testifying to the contents of the will as read by them. Ferguson v. Billups, 244 Ky. 85, 50 S.W.2d 35; Kendall v. Hillsboro & Poplar Plains Turnpike Road, 67 S.W. 376, 23 Ky.Law Rep. 2372.

The appellants contend that one of the attorneys for the step-son was disqualified under KRS 421.210 by personal interest from testifying as to various transactions with the decedent, and therefore objections to his testimony should have been sustained. The contention is not valid because the purpose of the testimony was only to show lack of mental capacity of the decedent; testimony for that purpose is not barred by the statute. See Gay v. Gay, 308 Ky. 539, 215 S.W.2d 92.

Since we hold that the testimony of Mr. Moore and of the beneficiaries of the will was competent, it is unnecessary for us to consider the appellants' argument that the testimony of other witnesses, as to declarations made by the decedent concerning his will, was not sufficient to establish the contents of the will.

The appellants rather casually argue (without having mentioned the point in the statement of questions presented at the beginning of their brief) that there was insufficient evidence to overcome the presumption of revocation arising from the fact that the will was not found among the decedent's papers after his death. There was evidence that during the last few years of his life the decedent was mentally incapable of revoking his will and that prior to and even extending into those years he frequently spoke of the will as being in existence. We think the evidence was sufficient to overcome the presumption of revocation.

The judgment is affirmed.